23-6129
Nkezea Efuetnji v. Bondi

BIA
Baumgarten, IJ
A240 739 843

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of May, two thousand twenty-five.

PRESENT:
  REENA RAGGI,
  STEVEN J. MENASHI,
  MARIA ARAÚJO KAHN,
        *Circuit Judges.*

_____

NKEZEA EFUETNJI,
        *Petitioner,*

  v.                                                      23-6129
                                                          NAC
PAMELA BONDI, UNITED STATES
ATTORNEY GENERAL,
        *Respondent.*

_____

FOR PETITIONER:           Rajan O. Dhungana, Esq., Anaheim, CA.

FOR RESPONDENT: Brian Boynton, Principal Deputy Assistant Attorney General; Anthony P. Nicastro, Assistant Director; Yanal H. Yousef, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Nkezea Efuetnji, a native and citizen of Cameroon, seeks review of a BIA decision summarily affirming an Immigration Judge's ("IJ") denial of his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Nkezea Efuetnji*, No. A 240 739 843 (B.I.A. Jan. 11, 2023), *aff'g* No. A 240 739 843 (Immig. Ct. Buffalo Sept. 13, 2022). We assume the parties' familiarity with the underlying facts and procedural history.

Because the BIA affirmed the IJ's decision without opinion, we review the IJ's decision as the final agency determination. *See Shunfu Li v. Mukasey*, 529 F.3d 141, 146 (2d Cir. 2008). We review fact-finding, including an adverse credibility determination, "under the substantial evidence standard," and we review questions of law and the application of law to fact *de novo. Hong Fei Gao v. Sessions*, 891 F.3d 67, 76 (2d Cir. 2018). "[T]he administrative findings of fact are conclusive

2

unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

As an initial matter, Efuetnji's contentions on appeal—that the agency misapplied Fifth Circuit case law and that his due process right to counsel was violated—are unexhausted because he did not raise them before the BIA. While issue exhaustion is "not jurisdictional," *Santos-Zacaria v. Garland*, 598 U.S. 411, 431 (2023), it is mandatory when, as here, the Government raises it, *see Ud Din v. Garland*, 72 F.4th 411, 419–20 & n.2 (2d Cir. 2023). We will not consider these arguments. *See Punin v. Garland*, 108 F.4th 114, 124 (2d Cir. 2024) ("[W]hen an argument made to this Court cannot be closely matched up with a specific argument made to the BIA, it has not been properly exhausted and we cannot hear it.").

We find no error in the IJ's determination that Efuetnji's testimony was problematic and insufficient to meet his burden, particularly given the lack of corroboration. An asylum applicant has the burden of proof to establish past persecution or a well-founded fear of future persecution. 8 U.S.C. § 1158(b)(1)(B)(i); 8 C.F.R. § 1208.13(a), (b). An applicant's testimony "may be sufficient to sustain the applicant's burden without corroboration," but only if the

3

applicant testifies credibly and persuasively. 8 U.S.C. § 1158(b)(1)(B)(ii). "Where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence." *Id.* "Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on . . . the consistency between the applicant's or witness's written and oral statements . . . , the internal consistency of each such statement, [and] the consistency of such statements with other evidence of record . . . without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor." *Id.* § 1158(b)(1)(B)(iii). "We defer . . . to an IJ's credibility determination unless . . . it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 167 (2d Cir. 2008); *accord Hong Fei Gao*, 891 F.3d at 76.

The IJ found Efuetnji not credible for two primary reasons, and each is supported by the record. His testimony was limited, generalized, lacked persuasive detail, and was presented in an almost "formulaic recitation of facts," leading the IJ to infer that the testimony had been memorized in a "scripted

4

fashion." Certified Administrative Record ("CAR") at 40–41. Second, a comparison of his written statements and testimony reflected an inconsistency of two years in Efuetnji's timeline. *See id.* at 43. When asked on direct examination "[w]here [he] and [his] family live[d] after" his family home burned down in October 2016, Efuetnji responded that "we . . . moved to my aunt's house in the region called Buea southwest region [of Cameroon]" that same month. *Id.* at 192. In his written I-589 application for asylum, however, Efuetnji stated that he remained in his home village after his family home burned down and only moved to Buea in June 2018. *Id.* at 193–94.

As to Efuetnji's vague and seemingly rehearsed testimony, an IJ "may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness." 8 U.S.C. § 1158(b)(1)(B)(iii); *Majidi v. Gonzles*, 430 F.3d 77, 81 n.1 (2d Cir. 2005) (noting that IJ is in best position to determine if applicant "was . . . attempting truthfully to recount what he recalled of key events or struggling to remember the lines of a carefully crafted script" (internal quotation marks omitted)). And "[a] fact finder may understandably find detailed testimony more convincing than vague testimony." *Shunfu Li*, 529 F.3d at 147. While "a finding of testimonial vagueness cannot, without more, support an adverse credibility

5

determination," it can where "government counsel or the IJ first attempts to solicit more detail from the alien." *Id.* Here, the IJ identified the areas of Efuetnji's testimony that were vague and attempted to elicit more detail, but Efuetnji's answers were often unclear, circular, or non-responsive.

As to the inconsistency in Efuetnji's timeline of events—whether his family moved to Buea in October 2016 or whether he remained in his home village until 2018—an IJ may rely on even minor inconsistencies where the "totality of the circumstances" supports an adverse credibility determination. *Xiu Xia Lin*, 534 F.3d at 167; *see also Likai Gao v. Barr*, 968 F.3d 137, 145 n.8 (2d Cir. 2020) ("[E]ven a single inconsistency might preclude an alien from showing that an IJ was compelled to find him credible. Multiple inconsistencies would so preclude even more forcefully."). Moreover, the IJ was not required to credit Efuetnji's explanation for the inconsistency (*i.e.*, that he made a mistake on his written I-589 application) given that it was a discrepancy of two years, and his application omitted entirely that his family's home was burned, which Efuetnji later testified was a significant factor in his fear of returning to Cameroon. *See Majidi*, 430 F.3d at 80 ("A petitioner must do more than offer a plausible explanation for his inconsistent statements to secure relief; he must demonstrate that a reasonable

6

fact-finder would be *compelled* to credit his testimony." (internal quotation marks omitted)).

Given these credibility concerns, the agency did not err in finding that the lack of corroboration further undermined Efuetnji's testimony or that it prevented him from meeting his burden of proof. "An applicant's failure to corroborate his or her testimony may bear on credibility, because the absence of corroboration in general makes an applicant unable to rehabilitate testimony that has already been called into question." *Biao Yang v. Gonzales*, 496 F.3d 268, 273 (2d Cir. 2007). Moreover, a lack of corroboration itself can be an independent basis to deny relief even absent an adverse credibility determination. 8 U.S.C. § 1158(b)(1)(B)(ii); *Wei Sun v. Sessions*, 883 F.3d 23, 27 (2d Cir. 2018); *see Pinel-Gomez v. Garland*, 52 F.4th 523, 529–30 (2d Cir. 2022) (explaining that the agency may find testimony credible but "still decide that the testimony falls short of satisfying the applicant's burden of proof, either because it is unpersuasive or because it [does] not include specific facts sufficient to demonstrate that the applicant is a refugee" (quotation marks omitted)).

The single document offered to corroborate Efuetnji's past persecution claim was a written statement from a cousin living in the United States, which reported

that Efuetnji was arrested, detained, and beaten in Cameroon, but did not confirm Efuetnji's testimony that his cousin had first-hand knowledge of those events or even that he was in Cameroon in 2016. Moreover, Efuetnji himself testified that he lived unharmed in Cameroon for six years after the alleged 2016 incidents before leaving Cameroon in 2022 to seek asylum in the United States. CAR at 131–44, 203–05, 157–58 (testifying he attended university classes in Cameroon and did not otherwise "interact[] with the military" in Cameroon military after late 2016).

The finding that Efuetnji failed to carry his burden due to a lack of either credible testimony or corroboration is thus supported by the record and dispositive of asylum, withholding of removal, and CAT relief because all forms of relief are here based on the same factual predicate.[1] *See Hong Fei Gao*, 891 F.3d at 76 ("Where the same factual predicate underlies a petitioner's claims for asylum, withholding of removal, and protection under the CAT, an adverse credibility

---

[1] As the IJ additionally found, even assuming credibility, Efuetnji did not satisfy his burden for CAT relief because he had to show that he would "more likely than not" be tortured, past torture is not alone sufficient evidence, and he remained unharmed in Cameroon for six years after the alleged incidents in 2016. *See Suzhen Meng v. Holder*, 770 F.3d 1071, 1076 (2d Cir. 2014) ("Past torture does not give rise to a presumption of future torture."); *Mu-Xing Wang v. Ashcroft*, 320 F.3d 130, 144 n.20 (2d Cir. 2003) (explaining that "more likely than not" means "that there is greater than a fifty percent chance . . . that [an applicant] will be tortured" (citation omitted)).

determination forecloses all three forms of relief."); *Lecaj v. Holder*, 616 F.3d 111, 119 (2d Cir. 2010) (holding that, because the petitioner "fail[ed] to demonstrate the slight, through discernable chance of persecution required for the grant of asylum, he necessarily fail[ed] to demonstrate the clear probability of future persecution required for withholding of removal and the more likely than not to be tortured standard required for CAT relief" (internal quotation marks and citation omitted)).

For the foregoing reasons, the petition for review is DENIED. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

9